OPINION
BARRY, Circuit Judge.
Juan Holguin de la Cruz pled guilty to illegally reentering the United States, and was sentenced. He now appeals. We will affirm.
I.
Holguin de la Cruz (“appellant”) entered the United States in 1986 after a failed attempt to enter in 1985. In 1987, he was arrested for attempted criminal possession of a weapon and sentenced to five years probation. He was again arrested in 1988, this time for drug possession, but failed to appear in court and a pre-arraignment warrant apparently remains outstanding. In 1989, he was arrested on a federal drug offense (possession with intent to distribute cocaine) and subsequently sentenced to 60 months imprisonment. He was deported in 1998, and re-entered in December 2000. In February 2001, he was arrested on state drug charges in New Jersey. While on bail, he fled and was a fugitive until 2004, when he was arrested in Massachusetts for recklessly operating a motor vehicle. He was sentenced to five years imprisonment on the state drug charges. In September 2007, he was released on a federal detainer and arrested by the Bureau of Immigration and Customs Enforcement.
Appellant was charged by information with violating 8 U.S.C. § 1326(a) and (b)(2). On May 6, 2008, he waived indictment and pled guilty. With an adjusted offense level of 21 (including a 16 level increase for his prior federal drug conviction) and a criminal history category of III, the applicable Sentencing Guidelines range was 46-57 months imprisonment. On December 10, 2008, the District Court sentenced appellant to 52 months imprisonment and three years of supervised release.
Appellant timely appealed, and argues: (1) the District Court erred by finding as a matter of law that it could not vary downward to compensate for the “fast-track disparity”; (2) his sentence is substantively unreasonable because of the offense level increase pursuant to U.S.S.G. § 2L1.2(b)(l)(A)(i); and (3) the “felony” and “aggravated felony” provisions of 8 U.S.C. § 1326 are facially unconstitutional.
II.
The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We first review a sentence for procedural error, “such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.” Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Second, we “consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.” Id.
III.
A. Fast-Track Disparity
At sentencing, appellant urged the District Court to vary downward on the basis of the “fast-track disparity.” Some *782 federal districts have fast-track programs which enable defendants charged with violating 8 U.S.C. § 1326 to receive lower sentences in exchange for waiving certain rights. Guideline § 5K3.1 permits a district court to depart downward by up to four levels pursuant to a fast-track program. Because appellant was not prosecuted in a fast-track district and was, therefore, not eligible for this downward departure, he asked the Court for a downward variance on the basis of “fast-track disparity.”
In United States v. Vargas, 477 F.3d 94 (3d Cir.2007), we held that because Congress had sanctioned the fast-track programs, any resulting sentencing disparity was not “unwarranted” under § 3553(a)(6).[1] At sentencing, the District Court predicted that “the Third Circuit ... will continue to take the position that a Congressionally imposed disparity is one that doesn’t contravene section 3553,” and so denied appellant’s request for a variance. (App. at 114.) We recently held, however, that “to the extent that [Vargas ] has been read ... as prohibiting a sentencing court’s discretion to consider a fast-track disparity argument because such a disparity is warranted by Congress under § 3553(a)(6) ... [that] interpretation is no longer the view of our Court in light of Kimbrough’s[2] analytic reasoning.” United States v. Arrelucea-Zamudio, 581 F.3d 142, 149 (3d Cir.2009). Vargas’s holding that it is not an abuse of discretion to decline to vary on this basis “remains viable after Kimbrough.” Id. at 148. Appellant is thus correct that, after our decision in Arrelucear-Zamudio, a district court has the discretion to vary downward because of fast-track disparity.
It is not entirely clear that the District Court recognized that it had this discretion. After hearing argument on several legal issues, including fast-track disparity, the District Court stated: “I recognize that all of these arguments were made to me in the context of variance, and recognize my discretion ... to accept them, and to craft them into my sentence.”[3] (App. at 113-14.) Appellant contends, however, that the Court was referring only generally to its power to vary, and notes that it had stated earlier that “I can disagree on *783 the facts of a particular case with regard to [Guideline policy. I don’t have the same power to disregard Congressional policy.” (App. at 95.)
What is clear is the District Court’s statement that it would impose a sentence of 52 months imprisonment even if its legal conclusions were incorrect. See United States v. Smalley, 517 F.3d 208, 212 (3d Cir.2008) (noting, in the context of an incorrectly calculated Guidelines range, that “once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district coui't’s selection of the sentence imposed”) (quoting United States v. Thayer, 201 F.3d 214, 229 (3d Cir.1999)).
Appellant argues that the District Court was “attempting] to insulate its legal ruling from appellate review” and did not provide adequate support for the sentence imposed. (Appellant’s Br. at 20.) “To be procedurally reasonable, a sentence must reflect a district court’s meaningful consideration of the factors set forth at 18 U.S.C. § 3553(a),” United States v. Lessner, 498 F.3d 185, 203 (3d Cir.2007), and provide sufficient explanation “to satisfy the appellate court that [it] has considered the parties’ arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority.” Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). We are satisfied that the Court adequately explained the sentence it imposed.
The District Court stated that a sentence of 52 months imprisonment “properly reflects the statutory considerations and seriousness of the offense, promotes respect for the law, just punishment, and deter[s] both this defendant and similarly situated defendants from reentering the United States.” (App. at 119.) It also explained that it selected the sentence it did “in part because of the defendant’s activity while here illegally,” including his criminal history and flight from prosecution:
So the history here is someone who has entered illegally at least twice, who each time he does so, he’s — or the second time he does so he is convicted of a serious offense[ ] and runs from the law and responsibilities, and the Court, and when given opportunities to do something else, he cho[o]ses to run. I can only be left with the conclusion that this defendant needs a substantial sentence in order to prevent continuing conduct, and to send a message to him and other[s] similarly situated that reentry into the United States or to engage in criminal behavior after having been deported previously of a serious offense is a serious offense, and there will be a substantial period of incarceration imposed if he is apprehended in that state.
(App. at 117, 118-19.) The Court also acknowledged appellant’s “family history, his desire to be in the United States, to be with family members” but noted that “there is a right way and wrong way to do that.” (Id. at 117-18.) It is thus clear that the Court properly considered the § 3553(a) factors and sufficiently explained the sentence it selected.
B. U.S.S.G. § 2L1.2 Special Offense Characteristic
Guideline § 2L1.2 sets the base offense level for unlawfully entering the United States at 8. U.S.S.G. § 2L1.2(a). It also provides that the offense level should be increased by 16 levels if the defendant was previously deported after a conviction for a drug trafficking felony for which the sentence imposed exceeded 13 months. Id. § 2L1.2(b)(l)(A)(i). Appellant does not challenge the calculation of the Guidelines range. Rather, he argues that *784 § 2L1.2 is itself unreasonable and that its application resulted in an unreasonable sentence. He asserts several policy arguments to support his position, including: (1) his adjusted offense level of 24 is comparable to the offense levels for more serious, violent crimes; (2) his prior conviction is double-counted, as it is factored both into his criminal history category and the offense level increase; and (3) the offense level increase lacks empirical support and overstates his risk of recidivism.
The District Court considered and rejected these arguments, and concluded that § 2L1.2 reflected a rational sentencing regime. The Court noted appellant’s comparison of his adjusted offense level to violent offenses, and concluded that the offense level increase was not irrational, given “the nexus between drug trafficking and weapons, and the nexus between unlawful reentry and drug trafficking crimes” as demonstrated by appellant’s own criminal history. (App. at 116.) The Court also concluded that the prior offense was not impermissibly double-counted because the criminal history points factor in the conviction itself and the offense level increase is based on the combination of both the “prior offense and being here illegally.” Id. at 117; see also U.S.S.G. § 2L1.2 cmt. n. 6 (“A conviction taken into account under subsection (b)(1) is not excluded from consideration of whether that conviction receives criminal history points.... ”); United States v. Garcia-Cardenas, 555 F.3d 1049, 1050 (9th Cir.2009) (rejecting claim that “use of a prior conviction as a basis for a sentencing enhancement and for calculating a defendant’s criminal history score constitutes impermissible double counting”); United States v. Ruiz-Terrazas, 477 F.3d 1196, 1204 (10th Cir.2007) (“[W]e have routinely upheld as reasonable the use of prior convictions to calculate both the criminal history category and a sentence enhancement where, as here, the Guidelines authorize it.”).
The District Court also compared the empirical data for the cocaine Guidelines at issue in Kimbrough with the formulation of § 2L1.2, and found that § 2L1.2 “is not a[G]uideline that is inconsistent with what a rational sentence regime would entail, and not inconsistent with general empirical data ... that reflect that a more serious punishment is warranted for more serious crimes.” (App. at 115-16.) The Court noted, as well, that “an objective view of [§ ] 2L1.2, as [the prosecutor] laid out, reflects the [Sentencing] Commission’s repeated efforts to reformulate and modify [§ ] 2L1.2 in a rational way. I don’t think you need much empirical data to support a Sentencing Guideline[ ] that increases the offense levels based on the nature of a conviction, the severity of it.... ” (Id. at 115.) Thus, the Court concluded, it did not “find anything unreasonable or inconsistent with empirical data in the calculation of [§ ] 2L1.2. Indeed, it’s consistent with common sense and ... importantly, tvith the conduct of this defendant.” (Id. at 117) (emphasis added).
Even after Kimbrough, a district court is not required to disagree with a Guidelines provision and vary downward if in fact the court does not have a policy disagreement with the Guidelines. See Arre-lucea-Zamudio, 581 F.3d at 148 (“[A] district court ‘is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential.’ ”) (quoting United States v. Gunter, 462 F.3d 237, 249 (3d Cir.2006)). It is clear from the record that the District Court found that the application of § 2L1.2(b)(l)(A)(i) in this case yielded a reasonable Guidelines range for this defendant. The Court stated:
I recognize that all of these arguments were made to me in the context of vari- *785 anee, and recognize my discretion ... to accept them, and to craft them into my sentence. But ultimately I’m persuaded here that the 16 level enhancement to [§ ] 2L1.2 is not legally deficient, and accurately reflects or postulates a sentence which furthers the statutory goals.
(App. at 113-14.)
Appellant points to several cases where district courts varied downward after finding that the application of § 2L1.2 resulted in an unreasonable sentence for the defendant in that case. For example, the district court in United States v. Galvez-Barrios was troubled by the 16 level increase in § 2L1.2 and the fast-track disparity, and imposed a below-Guidelines sentence. 355 F.Supp.2d 958 (E.D.Wis. 2005). Critical to the court’s analysis, however, were facts specific to that particular defendant, who had worked consistently and paid his taxes, and who had not committed any crimes after he re-entered the United States. Although appellant also sets forth various factors which he contends would support a variance, including his motivation for returning to the United States and an alleged delay in federal prosecution on the illegal reentry charge, the District Court’s decision “not to give such mitigating factors the weight that [appellant] contends they deserve does not render [the] sentence unreasonable.” United States v. Lessner, 498 F.3d 185, 204 (3d Cir.2007).
Given our deferential standard of review — we must affirm “unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided,” United States v. Tomko, 562 F.3d 558, 568 (3d Cir.2009) (en banc) — it is clear that the sentence is substantively reasonable. See United States v. Wise, 515 F.3d 207, 218 (3d Cir.2008) (“As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm.”).
C. “Felony” and “Aggravated Felony” Provisions of 8 U.S.C. § 1326(b)(1), (2)
Appellant argues that the “felony” and “aggravated felony” provisions of 8 U.S.C. § 1326(b)(1) and (2) are facially unconstitutional. He recognizes, however, that his claim is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and he raises the issue only to preserve it for possible Supreme Court review.
IV.
For the foregoing reasons, we will affirm the judgment of sentence.

. Title 18 U.S.C. § 3553(a)(6) provides that a sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.”

. Kimbrough v. United States, 552 U.S. 85, 110, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (holding that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder [cocaine] disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case”); see Spears v. United States, - U.S. -, 129 S.Ct. 840, 843, 172 L.Ed.2d 596 (2009) (noting that Kimbrough recognized "district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case”).

.The District Court continued:
But ultimately I'm persuaded here that the 16 level enhancement to [§ ] 2L1.2 is not legally deficient, and accurately reflects or postulates a sentence which furthers the statutory goals. Let me discuss that in somewhat more detail. I accept the notion that the Third Circuit would continue to impose Kimbrough, will continue to take the position that a Congressionally imposed disparity is one that doesn't contravene section 3553. Congress in enacting the Protect Act[,] clearly aware of [§ ] 2L1.2, appears to have intended to limit those programs to certain Districts. This is not one of those Districts. It's clear to me that Congress could have chosen differently, could have amended the [Guidelines in various ways and chose not to.
(App. at 114.)